Stephen Bryant, III                                                May 09, 2022

```
 1    IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
            DISTRICT OF TEXAS (Galveston Division)
 2
      STEPHEN PATRICK BRYANT, III    )
 3                                   )
        Plaintiff,                   )
 4                                   )
      V.                             )  NO. 3:20-CV 00374
 5                                   )
      GALVESTON COUNTY, TEXAS,       )
 6    ET AL.                         )
                                     )
 7      Defendants.                  )

 8

 9      *****************************************

10                    ORAL DEPOSITION OF

11             STEPHEN PATRICK BRYANT, III

12                     MAY 9, 2022

13                 (Reported Remotely)

14      *****************************************

15
           ORAL DEPOSITION of STEPHEN PATRICK BRYANT, III,
16    produced as a witness at the instance of the DEFENDANT
      HOLLEY, and duly sworn, was taken in the above-styled
17    and numbered cause on MAY 9, 2022, from 8:47 a.m. to
      10:45 a.m., before Stephanie M. Harper, RPR, CSR in and
18    for the State of Texas, recorded by machine shorthand,
      at La Marque, Texas pursuant to Rule 30 of the Federal
19    Rules of Civil Procedure and the provisions stated on
      the record or attached hereto; that the deposition
20    shall be read and signed before any notary public.

21

22

23

24

25                      JOB NO. 828160
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900     San Antonio, Texas 78232
210-697-3400                                                           210-697-3408

**Defendant's Exhibit 1**

```
 1                    A P P E A R A N C E S

 2    FOR STEPHEN PATRICK BRYANT, III.

 3        MR  RANDALL L. KALLINEN
          [via Zoom videoconference]
 4        KALLINEN LAW, PLLC
          511 Broadway Street
 5        Houston, Texas 77012
          (713) 320-3785
 6        attorneykallinen@aol.com

 7

 8    FOR DEFENDANT HOLLEY:

 9        MR. GREGORY B  CAGLE [via Zoom videoconference]
          TEXAS MUNICIPAL POLICE ASSOCIATION
10        1602B State Street
          Houston, Texas 77007-7730
11        713-489-4789
          gcagle@tmpalawyer.com

12

13

14    ALSO PRESENT

15        MR. KEITH HOWSE
          [via Zoom videoconference]
16
          MR. ERIK THORMAEHLEN,
17        MAGNA LEGAL SERVICES, LLC HOST
          [via Zoom videoconference]
18

19

20    REPORTED BY

21        STEPHANIE M  HARPER, RPR, CSR
          [via Zoom videoconference]
22        courtreporter@mac.com

23

24

25
```

```
 1                           INDEX
 2                    ORAL DEPOSITION OF
 3                STEPHEN PATRICK BRYANT, III
 4                        MAY 9, 2022
 5
 6                                                   Page
 7
 8   APPEARANCES..............................   2
 9   BY MR. CAGLE.............................   6
10   BY MR. KALLINEN..........................  94
11
12
13
14
15   WITNESS CORRECTIONS AND SIGNATURE........  96
16
17
18
19
20
21
22
23
24
25
```

```
 1                    EXHIBIT INDEX

 2                 ORAL DEPOSITION OF

 3            STEPHEN PATRICK BRYANT, III

 4                    MAY 9, 2022

 5

 6                  Description                    Page

 7   Exhibit 1   Galveston County Sheriff's  ...   13
                 Office "Involvement:
 8               BRYANT, STEPHEN PATRICK III"

 9   Exhibit 2   Indictment.....................   57

10   Exhibit 3   Intake Screening dated .......    74
                 12/15/2018
11

12
                           •_____•
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  ~~going to try to show you what I'm going to mark as~~
2  ~~Bryant Exhibit 3.~~
3  ~~Can you see that on the screen?~~
4  ~~(Exhibit 3 marked/introduced.)~~
5  ~~A.  Yes, sir.~~
6  ~~Q.  (BY MR. CAGLE)  And I meant to tell you,~~
7  ~~Mr. Bryant, or, obviously, anybody, if we need to~~
8  ~~take a break at some point, just let me know.  Just~~
9  ~~let me finish --~~
10 ~~A.  Yes, sir.~~
11 ~~Q.  Just let me finish the question, and then~~
12 ~~we can take a break.~~
13 ~~All right.  Can you see Exhibit 3 up~~
14 ~~there?~~
15 ~~A.  Yes, sir.~~
16 ~~Q.  Okay.  Have you ever seen Exhibit 3~~
17 ~~before?~~
18 ~~A.  No, sir.~~
19     Q.  All right.  Do you recall being
20 interviewed by a female EMT by the name of Joy Hart?
21     A.  I don't -- I don't specifically recall,
22 but I'm sure she did.
23     Q.  Okay.  Do you -- do you know Ms. Hart?
24     A.  I don't -- I don't know her personally.
25 No.

1    Q.   Okay.  Was there anything threatening
2    about Ms. Hart?  Did Ms. Hart do anything to cause
3    you any concerns?
4    A.   Oh, no.  She would have been real nice.
5    Q.   Okay.  And Ms. Hart interviewed you, it
6    indicates on this document, on December 15th at
7    about 0451 in the morning.  Does that sound right to
8    you?
9    A.   Yes, sir.
10   Q.   All right.  Ms. Hart took your blood
11   pressure, pulse, temperature, correct?
12   A.   Yes, sir.
13   Q.   All right.  And Ms. Hart, I guess, put
14   a -- do you recall Ms. Hart putting an O2 sensor on
15   your finger or on your ear?
16   A.   Sure.
17   Q.   All right.  Do you recall Ms. Hart asking
18   you the questions that we see here?  Question No. 2,
19   "Do you have any medical problems that require
20   immediate attention?"
21   A.   Yes, sir.  I -- I mean, she asked me those
22   question.  Yes, sir.
23   Q.   Okay.  And I want you to look at the
24   answers and tell me if these answers accurately
25   reflect what you told Ms. Hart back on December

1  15th, 2018.
2      A.   Yes, sir.
3      Q.   All right.  And I'll tell you, in looking
4  at Exhibit 3, there's -- there's no indication that
5  you ever reported to Ms. Hart that you had been
6  assaulted by a deputy, choked, or needed any kind of
7  medical attention at all.  Is that accurate?
8      A.   Correct.  Yeah.  I was totally against
9  reporting it at that time until I was bonded out due
10 to safety reasons.
11     ~~Q.   But you've been -- you've been in the~~
12 ~~Galveston County Jail a number of times, right?~~
13          ~~MR. KALLINEN:  Objection; more~~
14 ~~prejudicial than probative, argumentative.~~
15     ~~A.   Yes, I have.~~
16     ~~Q.   (BY MR. CAGLE)  So you're familiar with~~
17 ~~the grievance process within the Galveston County~~
18 ~~Jail, aren't you?~~
19     ~~A.   No, sir.~~
20          ~~MR. KALLINEN:  Objection; more~~
21 ~~prejudicial what's a -- not relevant.~~
22     ~~Q.   (BY MR. CAGLE)  Did you report to anyone~~
23 ~~at Galveston County Jail, the nurse, any of the~~
24 ~~deputies, the booking deputy, anyone, that you had a~~
25 ~~complaint against Deputy Holley or that you had been~~

Stephen Bryant, III

May 09, 2022
Page 80

1   Q.   And when I say you have no medical
2   expenses, I'm going to follow it up and ask did you
3   ever seek any medical treatment for any injury that
4   you allege that Deputy Holley caused?
5   A.   I -- I don't believe so.
6   ~~Q.   And when you were asked by Ms. Hart, the~~
7   ~~medical person at the jail, whether you had~~
8   ~~injuries, you didn't report any injuries or pain or~~
9   ~~the assault that you allege against Deputy Holley;~~
10  ~~is that correct?~~
11  ~~A.   I did not for safety reasons, again.~~
12  ~~Q.   Well, I know you have an excuse, but my~~
13  ~~question is simple, whether you in fact reported it~~
14  ~~or not. And your answer is no; is that right?~~
15  ~~A.   Correct. I did not.~~
16  ~~They're very close to the deputies~~
17  ~~that they work with, so...~~
18  ~~Q.   Do you have some evidence that Ms. Hart~~
19  ~~would retaliate against you or report it to the~~
20  ~~deputies?~~
21  ~~A.   No, just personal experience.~~
22  ~~Q.   Okay. Well, tell me about the personal~~
23  ~~experience where you've reported misconduct by a~~
24  ~~deputy and then --~~
25  ~~A.   I wouldn't say misconduct. I just knew~~

1  ~~that one time I was vomiting at -- while I was in~~
2  ~~jail. So from previous experience, you know, oh,~~
3  ~~this -- she would tell the deputies, Hey, this guy~~
4  ~~is sick. He's complaining about this. He's~~
5  ~~complaining about that.~~
6              ~~So, you know, if I would complain~~
7  ~~about something, Hey, I got choked by a deputy, she~~
8  ~~would most definitely go and tell the deputies, Hey,~~
9  ~~this guy has got a complaint.~~
10             ~~And then, you know, I don't know if~~
11 ~~that's misconduct. That's just relaying~~
12 ~~information.~~
13         ~~Q.   Okay.  So your belief is that Ms. Hart~~
14 ~~would have went and told the deputies and something~~
15 ~~bad would have happened to you?~~
16         ~~A.   Correct.  Not necessarily by Ms. Hart. By~~
17 any means.
18         Q.   Was there something from -- that prevented
19 you from telling Ms. Hart that your neck hurt and
20 you just didn't know what happened so you could get
21 medical treatment for it?
22         A.   I mean, no reason to lie.
23         Q.   Well, don't you think you --
24         A.   I just wanted to hurry up -- I just wanted
25 to hurry up and get it done.

1    Q.   ~~Well, don't you think you lied to Ms. Hart~~
2    ~~on the intake form~~ --
3    A.   I --
4    Q.   ~~-- when you were asked about whether you~~
5    ~~had any injuries?~~
6    ~~A.   I don't believe so.~~
7         ~~MR. KALLINEN:  Objection; assumes~~
8    ~~facts not in evidence and misstates the document~~ --
9    ~~what's on the document.~~
10        ~~But go ahead.  You can answer.~~
11   A.   ~~I mean, I had been assaulted.  I don't~~
12   ~~know if I was necessarily injured~~ --
13   Q.   ~~(BY MR. CAGLE)  Okay.~~
14   A.   ~~-- to where -- you know, I literally just~~
15   ~~wanted it to go away so I could get out of jail.~~
16   ~~It's -- you know.  Leave it at that.~~
17   Q.   So tell me physically what -- what you saw
18   and felt, I guess, after that you allege Deputy
19   Holley choked you.
20        MR. KALLINEN:  Objection; vague.
21   A.   Do you mean during or after or what?
22   Q.   (BY MR. CAGLE)  No.  I mean after.  Did
23   you experience pain?  Was there swelling, redness,
24   bruising?
25   A.   I was just very scared, and I couldn't

```
 1  believe it happened, you know.  I've never -- I've
 2  never been treated by a cop like that.  They're
 3  usually professional.
 4       Q.   Okay.  My question was different.  My
 5  question is:  You say you were scared; is that
 6  right?
 7       A.   Scared, yep.
 8       Q.   Okay.  Was there anything else that you
 9  suffered from other than being scared?
10            MR. KALLINEN:  Objection; asked and
11  answered.
12            But you can, you know, answer again.
13       A.   I mean, I was already diagnosed with PTSD,
14  so it just compounded and made my PTSD worse.  I'm
15  still scared of cops every single day.
16       Q.   (BY MR. CAGLE)  All right.  Who -- who
17  diagnosed you with PTSD?
18       A.   I can't get his name.  I've been trying to
19  get his name, but he doesn't work at the hospital
20  that I went to.  I don't even remember his name, but
21  it was at -- it was at the TIRR Rehabilitation
22  Center up in Houston.
23       Q.   Okay.  And what treatment did you get for
24  this PTSD at the TIRR rehab center?
25       A.   They just gave me -- put some -- gave me
```

1      A.   I -- I couldn't tell you.   It was a couple
2   of weeks.   Maybe -- maybe longer.   I'm not sure.
3      Q.   Did you have any -- any marks on your neck
4   that you could see at any point in time?
5      A.   I didn't take any pictures of myself.
6   I -- I should have but...
7      Q.   Well.  My question is different.  My
8   question is are --
9      A.   I don't know.
10     Q.   Sir?
11     A.   I don't know.
12     Q.   Well, do you have a mirror at your house?
13     A.   I -- I definitely would have had a mirror
14  around me, but it wasn't something that I focused
15  on.
16     Q.   Okay.  Are you -- so are you saying there
17  were never any marks that -- that you saw?
18     A.   I'm not saying that.
19     Q.   Okay.  Did you -- did you have marks on
20  your neck as a result of what you say Officer
21  Holley -- or Deputy Holley did?
22     A.   I don't know.
23     Q.   Okay.  Are you saying you don't know
24  because you never saw any?
25     A.   I don't know because I don't remember.

1  ~~Like, I wasn't like, Oh, there's a mark on my neck.~~
2  ~~Let me remember this for the rest of my life kind of~~
3  ~~things.~~
4      Q.  ~~Okay. Well —~~
5      A.  ~~That's what I'm saying.~~
6      ~~Q.  At some point you decided you were going~~
7  ~~to file a complaint against Deputy Holley, right?~~
8      A.  ~~I filed the complaint because I almost~~
9  ~~passed out in the backseat of the car. That's what~~
10 ~~I remember most vividly.~~
11     ~~Q.  Okay. Have you reviewed the photographs~~
12 ~~that Internal Affairs took when you came and filed~~
13 ~~the complaint?~~
14     ~~A.  I have not.~~
15     ~~Q.  All right. And if those photographs don't~~
16 ~~depict any red marks or any injury of any kind,~~
17 ~~would that surprise you?~~
18         ~~MR. KALLINEN:  Objection; assumes~~
19 ~~facts not in evidence and calls for speculation.~~
20     A.  ~~I would not be surprised by anythin~~g.
21     Q.  (BY MR. CAGLE)  Okay.  Are you saying at
22 some point between -- are you saying that at some
23 point in time you saw marks on your neck?  That's my
24 question.
25     A.  I told you I don't know.

Stephen Bryant, III                                          May 09, 2022
                                                                  Page 98

```
 1      IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
              DISTRICT OF TEXAS (Galveston Division)
 2
        STEPHEN PATRICK BRYANT, III    )
 3                                     )
             Plaintiff,                )
 4                                     )
        V.                             )   NO. 3:20-CV 00374
 5                                     )
        GALVESTON COUNTY, TEXAS,       )
 6      ET AL.                         )
                                       )
 7           Defendants.               )

 8      ******************************************************
 9      THE STATE OF TEXAS :

10      COUNTY  OF  HARRIS :

11

12           I, Stephanie M. Harper, a Certified Shorthand

13      Reporter in and for the State of Texas, hereby

14      certify to the following:

15           That the witness, STEPHEN PATRICK BRYANT, III,

16      was duly sworn by the officer and that the

17      transcript of the oral deposition is a true record

18      of the testimony given by the witness;

19           That the deposition transcript was submitted

20      on    5-29    , 2022, to the witness, or to the

21      attorney for the witness, for examination,

22      signature, and return to Magna Legal Services, LLC,

23      by    6-30   , 2022;

24           That the amount of time used by each party at

25      the deposition is as follows:
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900    San Antonio, Texas 78232
210-697-3400                                                           210-697-3408

Stephen Bryant, III

May 09, 2022
Page 99

```
 1        MR. CAGLE - 01 48 17

 2        MR. KALLINEN - 00:00.19

 3

 4        I further certify that I am neither counsel

 5   for, related to, nor employed by any of the parties

 6   or attorneys in the action in which this proceeding

 7   was taken, and further that I am not financially or

 8   otherwise interested in the outcome of the action.

 9        GIVEN UNDER MY HAND AND SEAL OF OFFICE, on

10   this, the 23rd day of May, 2022.

11

12                    [signature: Stephanie Harper]

13

14        _____

15        STEPHANIE M HARPER, CSR
          Certification No : 7433
16        Expiration Date  5-31-23

17   Magna Legal Services, LLC
     Firm Registration No. 633
18   1635 Market Street, 8th Floor
     Philadelphia, Pennsylvania 19103
19   866-624-6221

20

21

22

23

24

25   JOB NO. 828160 [STEPHEN PATRICK BRYANT, III]
```

Kim Tindall and Associates, LLC  16414 San Pedro, Suite 900    San Antonio, Texas 78232
210-697-3400                                                    210-697-3408